IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL BOSWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-502-SMD |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION & ORDER

Plaintiff Michael Boswell ("Boswell") applied for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging he became disabled on October 19, 2020. Tr. 335. Boswell's application was denied at the initial administrative level. Tr. 167-79, 181-93. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Boswell was not disabled. Tr. 21-37. Boswell appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 4-10. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Boswell appeals the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Court AFFIRMS the Commissioner's

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

decision.[2]

## I.      STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible

to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir.

1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific
> impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the

above questions leads either to the next question, or, on steps three and five, to a finding

of disability. A negative answer to any question, other than step three, leads to a

determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072,

1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's

Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 9); Def.'s Consent (Doc. 10).

[3] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy he can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.    ADMINISTRATIVE PROCEEDINGS

Boswell was 49 years old on his alleged disability onset date. Tr. 335. He graduated high school and has past relevant work experience as a poultry worker, welder, iron worker, and construction worker. Tr. 36, 78-79. Boswell alleged disability due to acid reflux; gout; carpal tunnel syndrome; pain in his back, hip, and ankle; and arthritis. Tr. 339.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Boswell's disability determination. At step one, the ALJ found Boswell has not engaged in substantial gainful activity since his alleged onset date. Tr. 24. At step two, the ALJ found Boswell suffers from the following severe impairments: gastroesophageal reflux; right ankle degenerative joint disease; bilateral carpal tunnel syndrome; lumbar degenerative disc disease; hip degenerative joint disease; arthritis; gout; bilateral cataracts; depressive disorder; and anxiety disorder. Tr. 24. At step

4

three, the ALJ found Boswell does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments. Tr. 24.

The ALJ proceeded to determine Boswell's RFC, finding he has the capacity to

perform light work with additional postural, environmental, and interactional limitations.

Tr. 28. At step four, the ALJ found Boswell unable to perform any past relevant work. Tr.

36. At step five, the ALJ considered Boswell's age, education, work experience, and RFC

and found that jobs exist in significant numbers in the national economy that Boswell can

perform. Tr. 36. Accordingly, the ALJ found Boswell was not disabled from October 19,

2020, through the decision date. Tr. 37.

## IV.    BOSWELL'S ARGUMENTS

Boswell presents two issues for the Court's review:

1.  Whether the ALJ erred by failing to properly evaluate the persuasiveness
    of Dr. Oluyinka Adediji's medical opinion.

2.  Whether the ALJ erred by failing to account for Boswell's visual
    limitations associated with his cataracts in the RFC.

Pl.'s Br. (Doc. 11) at 6.

## V.    ANALYSIS

### 1.  Whether the ALJ properly evaluated the persuasiveness of Dr. Oluyinka Adediji's medical opinion.

Dr. Oluyinka Adediji ("Dr. Adediji"), who performed a consultative examination of

Boswell at the Commissioner's request, opined that Boswell could tolerate a predominately

sitting workload due to pain attributable to multiple factors including uncontrolled gout.

Tr. 34. Dr. Adediji based this opinion on his findings that Boswell was, *inter alia*, in

distress due to pain; had an antalgic gait with a limp on the right foot; and was unable to heel, toe, or tandem walk. Tr. 1001-05.

The ALJ found Dr. Adediji's opinion "not persuasive," reasoning that the opinion "is not well supported by the evidence relied upon in explanation of the opinion" and "not consistent with the updated evidence in the record from other sources[.]" Tr. 34. Boswell argues that the ALJ erred in addressing the supportability of Dr. Adediji's opinion because the explanation is insufficiently specific to allow for the Court's meaningful review. Pl.'s Br. (Doc. 11) pp. 8-12. Boswell does not challenge the ALJ's finding that the opinion was not consistent with other evidence in the record. *Id.*

In evaluating the persuasiveness of a medical opinion, an ALJ is required to consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). Because supportability and consistency are the "most important" factors considered, an ALJ must articulate how he considered these factors for a medical source's opinion. *See Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021); 20 C.F.R. § 404.1520c(a)-(c). An ALJ may—but is not required to—explain how he considered the other remaining factors. *Nix v. Saul*, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

The Social Security Regulations provide that a "medical opinion *without supporting evidence, or one that is inconsistent with evidence from other sources*, will not be persuasive regardless of who made the medical opinion." 82 F. Reg. 5844, 5845 (Jan. 18,

2017) (emphasis added). "Thus, a medical opinion is unpersuasive if it is *either* unsupported by, *or* inconsistent with, the record." *Tracy F. v. O'Malley*, 2024 WL 1701572, at *3 (D. Idaho Apr. 19, 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 792-93 (9th Cir. 2022)) (emphasis added). As a result, if an ALJ fails to consider or adequately explain the supportability factor for a medical opinion, the error may be harmless if substantial evidence supports the ALJ's consistency factor finding that the opinion is unpersuasive. *Id*. at *4; *see also Turrentine v. Kijakazi*, 2021 WL 3421404, at *5 (N.D. Ala. Aug. 5, 2021) (finding that the ALJ's failure to adequately explain how she considered the supportability and consistency of a medical opinion "is harmless [error] when a correct application of the regulations would not contradict the ALJ's findings.") (citing *Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.")).

Here, any error by the ALJ to adequately explain his supportability factor finding is harmless because the ALJ's consistency factor finding provides substantial evidence to support the ALJ's conclusion that Dr. Adediji's opinion was not persuasive. In addressing the consistency factor, the ALJ found that Dr. Adediji's opinion was "not consistent with the updated evidence in the record from other sources," including documentation showing Boswell's "ongoing reports of multiple joint and back pain, but good response to treatment including . . . pain medication for his other joint[] pains, with lifestyle and diet recommendations to help control gout flares and pain[.]" Tr. 34. Boswell does not challenge the ALJ's consistency factor finding, and the Court finds that the ALJ's

consistency factor finding is substantial evidence supporting his conclusion that Dr. Adediji's opinion is not persuasive. As such, any error by the ALJ to sufficiently articulate the supportability of Dr. Adediji's opinion is harmless, as a correct application would not change the finding that the opinion is not persuasive. *See, e.g.*, *Thompson v. Comm'r of Soc. Sec.*, 2022 WL 3098039, at *6 (D. Ariz. Aug. 4, 2022) ("Even though the ALJ erred in consideration of supportability, he properly rejected the opinion based on consistency."); *Tara B. v. Comm'r of Soc. Sec.*, 2023 WL 4946573, at *5 (W.D. Wash. Aug. 3, 2023) ("[T]he ALJ's finding that [a medical opinion] is inconsistent with the longitudinal record itself provides a sufficient basis for the ALJ to conclude that the opinion was unpersuasive."); *Richard B. v. Kijakazi*, 2022 WL 16709174, at *12 (N.D. Ga. Sept. 19, 2022) ("But even assuming that the ALJ's narrative discussion here did not adequately explain the supportability and consistency factors . . . any such error is harmless because the ALJ's findings are supported by the record, as a whole, and further explanation—*i.e.*, correct application of the regulations—would not contradict the ALJ's findings or disability determination.").

### 2. Whether the Commissioner failed to account for Boswell's visual limitations associated with his cataracts in the RFC.

Boswell argues that the ALJ erred by failing to include visual limitations for his cataracts in the RFC or by otherwise failing to explain his omission for such limitations. Pl.'s Br. (Doc. 11) pp. 12-16. According to Boswell, the ALJ's omission of visual limitations is harmful error because the occupations relied on by the ALJ to conclude that work was available to Boswell all "require frequent near acuity." *Id*. at 16.

A claimant's RFC is an assessment of his ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An RFC determination is within the authority of the ALJ, and the assessment should be based on all relevant evidence of a claimant's ability to work despite his impairments. *Beech v. Apfel*, 100 F. Supp. 1323, 1330 (S.D. Ala. 2000) (citing *Lewis*, 125 F.3d at 1440). Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (11th Cir. 2019) (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). Importantly, though, severe impairments "do not necessarily 'impose significant work-related limitations' for the purposes of the subsequent RFC.'" *Fortner v. Astrue*, 2013 WL 3816551, at *6 (N.D. Ala. July 22, 2013) (quoting *Walters v. Barnhart*, 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001)); *see also Mancini v. Comm'r of Soc. Sec.*, 2021 WL 1087270, at *1 (M.D. Fla. Mar. 22, 2021) (holding that although a specific limitation need not "always be attributed to a 'severe impairment,'" "reversal may be appropriate" "where nothing in the record reveals whether the ALJ considered the effect of the impairment in assessing the RFC").

Here, the ALJ found that Boswell's cataracts were a severe impairment, Tr. 24, and acknowledged Boswell's testimony that "[e]verything looks blurry when he tries to read or write[.]" Tr. 29. However, the ALJ did not incorporate these or other visual limitations into his RFC. In choosing not to limit Boswell's ability to work due to his cataracts, the ALJ noted that although Boswell was diagnosed in September 2021 with "age-related nuclear cataracts in both eyes," his treating physician found that his cataracts "are '*not visually significant*[.]'" Tr. 32 (emphasis added). The treating physician's finding that Boswell's

cataracts were not visually significant is substantial evidence supporting the ALJ's decision

to not impose visual limitations related to those cataracts.[6]

To be sure, Boswell points to other evidence in the record that arguably shows visual

limitations in the RFC were warranted. Specifically, Boswell points to (1) medical records

showing that his visual acuity varied, and (2) his testimony that he experienced both

sensitivity to light and blurred vision when reading or writing. Pl.'s Br. (Doc. 11) pp. 16-

17.[7] However, it is not within the Court's purview to reweigh the evidence before the ALJ.

---

[6] The Commissioner appears to interpret the treating physician's statement that Boswell's cataracts were not visually significant to mean that the physician could not visually detect cataracts in Boswell's eyes. Comm'r Br. (Doc. 12) p. 5 (the Commissioner noting that the physician "stated no cataracts could be visually detected in [Boswell's] eyes."). However, this interpretation is inaccurate. The physician did not state that Boswell's cataracts were not visually *detectable*. Instead, the physician stated that Boswell's cataracts were not visually *significant*. The latter statement is more accurately interpreted to mean that Boswell's cataracts did not significantly affect his vision—not that others were unable to see the cataracts in Boswell's eyes. This interpretation of the physician's note is further supported by the physician's subsequent records, which note that there was "[n]o evidence for [Boswell's] current ocular complaints" and that Boswell should, at a later date, "find a Cataract Surgeon to remove his cataracts when he feels cataracts are visually significant." Tr. 1264.

[7] The Court notes that the medical evidence cited by Boswell purportedly showing a need for visual limitations is not necessarily attributable to Boswell's cataracts. Indeed, Boswell first points to a medical record generated from a musculoskeletal exam related to Boswell's complaints of pain in his hip. Pl.'s Br. (Doc. 11) p. 16 (citing Tr. 1002). While the record notes that Boswell's visual acuity with glasses was less than 20/20, Tr. 1002, it does not attribute his blurry vision to cataracts. *See* Tr. 1001-05. Boswell also points to medical records memorializing four visits to Retina Specialists of Alabama ("RSA") wherein he was assessed to have less than 20/20 visual acuity. Tr. 1386-94. However, these RSA records discuss Boswell's treatment for central serous chorioretinopathy and do not address his bilateral cataracts or in any way attribute his lack of visual acuity to that condition. Tr. 1386-94. Finally, Boswell points to a medical record from an eye exam showing, again, that his visual acuity was less than 20/20. Tr. 1254. And while that record indicates that Boswell has bilateral cataracts, it does not attribute any lack of visual acuity to those cataracts and later notes that the cataracts are not visually significant. Tr. 1254. Because none of the records cited by Boswell attribute his purported vision problems to cataracts, his evidence does not show that the ALJ erred in failing to include vision-related limitations in his RFC resulting from his severe impairment of cataracts.

Further, as for Boswell's testimony regarding his visual limitations, *see* Tr. 29, the ALJ determined that Boswell's testimony was "not entirely consistent with the medical and other evidence," Tr. 30. Boswell has not challenged this finding and has therefore waived the argument. Thus, to the extent Boswell contends that the ALJ failed to include visual limitations in his RFC based on his own testimony, the Court finds that the ALJ did not err, as the ALJ discounted that testimony.

As substantial evidence supports the conclusion that Boswell's cataracts did not warrant visual limitations in his RFC, the Court finds that the ALJ did not err.

## VI.    CONCLUSION

For the reasons above, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 19th day of August, 2024.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE